**In the United States District Court
for the District of Kansas**

---

Case No. 23-cr-40013-TC-1

---

UNITED STATES OF AMERICA,

*Plaintiff*

v.

COURTNEY L. CROCKETT,

*Defendant*

---

**MEMORANDUM AND ORDER**

Courtney L. Crockett is charged with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). He moves to suppress all evidence obtained from the execution of a search warrant at his home. Doc. 14. For the following reasons, his motion is denied.

**I**

**A**

Crockett makes two claims. One concerns the constitutionality of the search. The other concerns the propriety of obtaining a warrant from a state judge. Each has its own framework.

**1**. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (recognizing incorporation against the states). Absent a recognized exception, the Fourth Amendment prohibits warrantless searches that violate a person's objectively reasonable expectation of privacy by invading a constitutionally protected space or thing. *United States v. Jones*, 565 U.S. 400 (2012); *see also United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016).

1

For a warrant to be valid, it must be supported by probable cause and "particularly describ[e] … the persons or things to be seized." *United States v. Leary*, 846 F.2d 592, 600, 605 (10th Cir. 1988) (alteration in original). Probable cause exists when there "is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Alqahtani*, 73 F.4th 835, 842 (10th Cir. 2023). While a "fair probability" must exist, establishing probable cause "does not demand all possible precision." *Herring v. United States*, 555 U.S. 135, 139 (2009). A warrant is not particular when it authorizes the type of general exploratory searches the Fourth Amendment was intended to prevent. *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021); *see also United States v. Cotto*, 995 F.3d 786, 800 (10th Cir. 2021) (explaining that a warrant is not impermissibly general when it "specifically" identifies the items to be seized). Blanket suppression is the only remedy for a general warrant. *Cassady v. Goering*, 567 F.3d 628, 638 (10th Cir. 2009).

A warrant application must also establish "a nexus" between the material to be seized or suspected criminal activity "and the place to be searched." *Herring*, 555 U.S. at 139 (citing *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998)). A nexus is established when the supporting affidavit describes "circumstances which would warrant a person of reasonable caution" in the belief that the items to be seized are at the place to be searched. *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009). If the warrant was not supported by probable cause or no nexus is established, the exclusion of the seized evidence from trial proceedings may be required. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (noting that exclusion should always be a "last resort, not [a] first impulse").

A warrant may be overbroad if it authorizes the seizure of items for which there is no probable cause along with items for which there is. *Cotto*, 995 F.3d at 798. When a warrant is overbroad, its invalid parts may be severable, and suppression is only required for evidence seized pursuant to the invalid parts. *Cassady,* 567 F.3d at 637. To sever invalid portions, the Tenth Circuit follows a "commonsense" approach: Any section that describes distinct subject matter "in language not linked" to other categories that retains its significance when "isolated" from the remainder of the warrant is evaluated separately for probable cause and particularity. *United States v. Suggs*, 998 F.3d 1125, 1138 (10th Cir. 2021). Evidence seized pursuant to sections lacking either probable cause or particularity may be suppressed. *Id.* at 1137–38.

Evidence is suppressed where "police conduct" is "sufficiently deliberate" and "sufficiently culpable" that "deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). In most cases that means evidence is only excluded where exclusion deters "deliberate, reckless, or grossly negligent conduct," or in rare cases "recurring or systemic negligence." *Id.*; *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("[a]llegations of negligence or innocent mistake are insufficient" to justify exclusion). Consequently, exclusion is not called for if the officer executing the warrant reasonably relied on it in good faith. *United States v. Leon*, 468 U.S. 897, 922–25 (1984); *Suggs*, 998 F.3d at 1140; *see also United States v. Gaines*, 918 F.3d 793, 802–803 (10th Cir. 2019). And the threshold for establishing lack of good faith is high. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). A movant may establish a lack of good faith where the executing officers lied to obtain the warrant, knew they were carrying out a warrantless search, or where there is extreme facial overbreadth. *See United States v. Medlin*, 798 F.2d 407, 409–410 (10th Cir. 1986); *Leary*, 846 F.2d at 606–610.

**2**. Fed. R. Crim. P. 41 establishes where and how to apply for a warrant that is federal in character. *United States v. Krueger*, 809 F.3d 1109, 1112 (10th Cir. 2015). Rule 41(b)(1) requires that the officer seeking a warrant apply to a federal "magistrate judge with authority in the district" where property or persons to be searched or seized is located "or if none is reasonably available," a state court judge in the district. Where Rule 41(b)(1) is violated, suppression is warranted only if the rule violation was intentional, prejudicial, and of "constitutional magnitude." *Krueger,* 809 F.3d at 1113–14. Prejudice is defined in the Rule 41(b)(1) context as a showing that the search might not have occurred but for the violation or would not have been "so abrasive" had the Rule been followed. *Id.* at 1115.

Rule 41(b)(1) is not implicated when a search warrant is of state, rather than federal, character. A search warrant request retains its state character when it was requested by a state law enforcement officer, was issued by a state judge, its execution was planned and carried out by state officers, and there is no evidence that a federal prosecution was envisioned at the time of the search. *United States v. Sadlowski*, 948 F.3d 1200, 1204 (10th Cir. 2020) (citing *United States v. Barrett*, 496 F.3d 1079, 1090–91 (10th Cir. 2007)).

**B**

This case arises out of an investigation into controlled substances distribution, including marijuana and methamphetamine, that implicated a home in the 200 block of Southeast Klein Street in Topeka, Kansas.[1] Based on that investigation, Shawnee County Deputy Christopher Dahlke drafted and received a warrant from Shawnee County District Court. Doc. 14-1. The warrant permitted him to search the Klein St. residence for evidence of two listed offences: "possession with intent to distribute THC/Marijuana" in violation of K.S.A. § 21-5705(a)(4) and "use/possess [sic] with intent to use drug paraphernalia [to introduce a controlled substance] into the human body" in violation of K.S.A. § 21-5709(b)(2). Doc. 14-1 at 3. While searching the Klein St. residence, officers discovered a firearm belonging to Crockett, an individual who the officers suspected was a prohibited person according to Dahlke's testimony on November 16.

In support of the search warrant, Dahlke submitted a 16-page affidavit to a Shawnee County, Kansas judge. Dahlke attested that he knows "how controlled substances are obtained, diluted, packaged, distributed, sold, transported and used." Doc. 14-1 at 2. Based on his "training and experience," he knew that "narcotics dealers maintain access to large amounts of U.S. currency," "commonly purchase vehicles … used as a conveyance," "possess certain paraphernalia required to conduct drug sales," and "facilitate their narcotics trade through the use of … cellular phones" of which they often have multiple, some used for legitimate purposes and others used to facilitate "illicit activities." *Id.* at 2–3. Dahlke attested that he has "seen where dealers have taken photographs and video of their narcotics, guns and all the money they have made by selling narcotics," as "trophy shots." Doc 14-1 at 2.

Dahlke also listed specific information from the arrest of a known dealer of controlled substances that linked the Klein St. residence with a suspected distributor. When arrested, the dealer possessed substances that presumptively tested positive for methamphetamine and THC. Doc. 14-1 at 4. In an interview, the dealer identified Damario "Mario" King as a "big crystal methamphetamine dealer." Doc. 14-1

---

[1] Underlying facts are drawn from the parties' briefs, the warrant and supporting affidavit, and the testimony provided at the November 16 and 20 suppression hearings. All citations are to the document number and pagination in the CM/ECF system.

at 5. When later rearrested, the dealer identified social media and driver's license photos of Mario. *Id.* at 6. Additionally, the dealer offered information regarding the location of Mario's apartment and identified a Gold 2012 Buick as his car. While performing physical surveillance of another suspected dealer who the arrestee identified, Dahlke noticed a Gold 2012 Buick "visiting the address regularly." *Id.* During a traffic stop, the driver of the Gold 2012 Buick identified himself as Mario. Doc. 14-1 at 7. Mario had past convictions for, among other things, Possession with Intent to Distribute Marijuana and Cocaine Hydrochloride. *Id.*

While surveilling Mario, Dahlke identified two houses that he visited "more than any other houses." Doc. 14-1 at 9. One was the Klein St. residence. Doc. 14-1 at 9. Nearly every day, Mario left a home on Twilight Drive, proceeded to one of the two houses he visited most regularly, then to "several different houses making short frequent stops," before returning at the end of the day to one of the two most visited homes, and then returning to the home on Twilight Drive for the night. *Id.* at 9. The frequent "short term traffic" at the Klein St. residence indicated to Dahlke that the Klein St. residence may be "a street level distribution house." *Id.* at 10.

On July 1, 2022, Dahlke and another officer pulled trash from the Klein St. residence. Doc. 14-1 at 10. "The trash cans were out near the edge of the alley on the west side, placed in a location for routine pickup, which is away from the home." *Id.* At the November 16 hearing, Dahlke testified that a privacy fence separated the home from the alley, and that the cans were on the alley side of the fence. The officers retrieved several relevant items from the trash: one black and clear vacuum seal bag labelled "GPP" with a green leafy substance inside (which presumptively tested positive for THC/Marijuana), one pack of cigarettes with a "roach" inside, one plastic bag labelled "pink," one plastic bag labelled "WM" and "P", and mail addressed to "Courtney Crockett 2XX SE Klein St, Topeka." Doc. 14-1 at 1.

A second trash pull from the same cans on July 15 revealed "one green stem[] mixed in with loose leaf tobacco," and "five home rolled cigarettes," all of which presumptively tested positive for

THC/Marijuana, and multiple pieces of mail addressed to Crockett.[2] Doc. 14-1 at 11–12. Dahlke testified that he identified "WM", "P", and "pink" as possible flavors/kinds of controlled substance.

Relying on Dahlke's affidavit, Shawnee County District Court found probable cause to issue a search warrant for the Klein St. residence. The warrant authorized a search for the following categories of items:

(1) Controlled substances including but not limited to THC/Marijuana.
(2) Drug paraphernalia including but not limited to scales, packaging materials, pipes, syringes or other instruments used to ingest or distribute narcotics.
(3) Any and all documents, written or electronic, including but not limited to computers, books, records, receipts, notes, ledgers, US currency, money orders and or wire transfers receipts, rental agreements, other papers relating to the transportation, ordering, possession, sale, and distribution of controlled substances.
(4) Any cell phones and their components to include but not limited to SIM cards, memory cards or other digital recording media, and chargers.
(5) Any documents, letters or records indicating ownership of real estate, bank accounts, vehicles, firearms, weapons, or other property.
(6) Any surveillance cameras, surveillance equipment to include early warning devices.
(7) Any firearms to include but not limited to clips, magazines, scopes, cases and ammunition.

Doc. 14-1 at 14.

The warrant was executed on the Klein St. residence on July 27, 2022. Doc. 14 at 9. Officers seized "drugs, a gun, a magazine, and ammunition." *Id.* Based on the evidence uncovered during the search,

---

[2] Regular trash pickup occurs at Klein St. on Fridays. Doc. 14-1 at 11. July 1 and 15, 2022 were Fridays. *Id.* at 10–11.

6

Crockett was indicted on one count of possessing a firearm after having been convicted of a felony. *Id.* at 9.

## II

The Klein St. residence search, which resulted in the discovery of Crockett's gun, was lawful. And the state officer's reliance on a state court to issue a warrant did not violate Fed. R. Crim. P. 41 or result in any prejudice. Crockett's motion to suppress is therefore denied.

### A

The lawful trash pulls, along with other information in the affidavit, established probable cause to believe the Klein St. residence was being used to engage in the illegal use and distribution of controlled substances, including marijuana. The warrant was not facially overbroad, nor did it present a *Franks* issue.

#### 1.

An individual who places their trash out on a public curb for trash collection has no objectively reasonable expectation of privacy in the contents of the trash. *California v. Greenwood*, 486 U.S. 35, 40 (1988). That is what occurred in this case. At the November 20 hearing, Crockett contended that trash bags and trash cans should be treated separately, and that *Greenwood* applies only to trash bags. Nothing in *Greenwood* supports that conclusion. Whether in bags or cans, trash out on the curb for pickup is there "for the express purpose of conveying it to a third party, the trash collector." *Greenwood*, 486 U.S. at 40–41. Accordingly, there is no "reasonable expectation of privacy in the inculpatory items that [are] discarded." *Id.*

Crockett attempts to circumvent *Greenwood* by contending that a trespass-based theory of the Fourth Amendment requires a different result. Doc. 14 at 11–12 (suggesting that *United States v. Jones,* 565 U.S. 400 (2012), by implication, undermines *Greenwood*). His argument lacks merit for two reasons.

First, trespass-based searches only occur when the Government physically intrudes on a constitutionally protected area or thing. The Fourth Amendment does not prevent all investigations conducted on private property or all investigations of privately-owned items. *Fla. v. Jardines*, 569 U.S. 1, 6 (2013). Instead, only "persons, houses, papers,

and effects" are within the ambit of Fourth Amendment protection, *id.*, and even then, only when expectations of privacy in such places and effects are reasonable, which is not the case with trash out for collection. *See, e.g.*, *United States v. Maestas*, 639 F.3d 1032, 1036–40 (10th Cir. 2011); *United States v. Andas-Gallardo*, 3 F. App'x 959, 962 (10th Cir. 2001); *United States v. Brown*, 586 F. Supp. 3d 1075, 1085 (D. Kan. 2022); *see also United States v. Nelson*, No. 19-20059-01, 2020 WL 6343301, at *7 (D. Kan. Oct. 29, 2020) (where there is no evidence that "officers physically trespassed on the curtilage" of a home nor any "legally-recognized reasonable expectation of privacy in one's trash set out for collection," the trash itself cannot qualify as an "effect" "entitled to Fourth Amendment protections.").

Second, Crockett forfeited the possessory rights necessary to pursue a trespass-based theory when he voluntarily placed the trash in cans away from the home with no intent to ever retrieve it. A "voluntary" manifestation of an intent to abandon combined with affirmative steps to abandon property terminates any Fourth Amendment interest in preventing searches of that property. *United States v. Ruiz*, 664 F.3d 833, 841 (10th Cir. 2012); *accord United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020) (the "law is well established that a person who voluntarily abandons property … is consequently precluded from seeking to suppress evidence seized from the property"), *United States v. Madison*, 936 F.2d 90, 96 (2nd Cir. 1991) (absent compelled abandonment, property abandonment forfeits any Fourth Amendment rights regarding the property). Crockett demonstrated a voluntary intent to abandon and took affirmative steps to abandon when he placed his trash outside the property's fence on the date trash was scheduled to be collected. Doc. 14-1 at 10-11.

**2.**

Crockett admits that if the trash pulls were constitutional, probable cause existed to search the Klein St. residence for marijuana linked to the crime of marijuana possession. Doc. 14 at 23. But he disputes that there was probable cause to search the Klein St. residence for evidence of marijuana *distribution*, because the amount of marijuana discovered was consistent with personal use and because federal marijuana penalties for possession include an exception for marijuana obtained pursuant to a valid prescription. Doc. 14 at 19–20; *see* 21 U.S.C. § 844(a) (detailing an exception for marijuana obtained by prescription). This argument misses the mark.

The warrant gave the officers permission to enter the residence and search for both drug use and distribution. That warrant was valid because possession of marijuana in *any* amount, even for personal medical use, is a crime in Kansas. Kan. Stat. Ann. § 21-5706(a) (making the possession of controlled substances unlawful); § 65-4105(d) (listing marijuana as a controlled substance); § 65-4105(h) (listing cannabinoids as controlled substances). So any amount of marijuana found in the Klein St. trash, "trace" or otherwise, created a "fair probability" that illegally possessed marijuana would be found within the residence. *See United States v. Colonna*, 360 F.3d 1169, 1173 (10th Cir. 2004) (holding that marijuana discovered in a trash pull consistent with only personal use still supports probable cause to search a home for evidence of illegal possession, use and distribution of marijuana), *overruled on other grounds by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016); *see also United States v. Jenkins*, 819 F. App'x 651, 660 (10th Cir. 2020) (describing the residue of controlled substances within trash bags as evidence tending to support probable cause to search for controlled substances in the home linked to the trash bags). And in this case, the link between the trash and residence is clear: Mail found in the trash was addressed to the Klein St. residents, including Crockett. Furthermore, Dahlke had evidence that a suspected dealer of controlled substances, Mario King, was using the Klein St. residence to further drug distribution activities. This adequately establishes a fair probability to believe evidence of drug distribution activities would be located within the Klein St. residence.

### 3.

Crockett next argues the warrant was overbroad without the possibility of severance for two reasons. First, he contends the warrant was overbroad and severance is not possible because the warrant has no valid parts and even if it does, the invalid parts make up the majority of the warrant. Doc. 14 at 18–25. Second, Crockett argues that the warrant was pretextual. Doc. 14 at 25. Neither argument is persuasive.

**a.** The Tenth Circuit's overbreadth framework requires a court to analyze each severable category of evidence within a warrant for both probable cause and particularity. *United States v. Suggs*, 998 F.3d 1125, 1138 (10th Cir. 2021). If the categories for which probable cause is lacking outweigh the supported categories, blanket suppression is required. *Cassady v. Goering*, 567 F.3d 628, 637 (10th Cir. 2009). Suppression of evidence seized pursuant to any invalid categories is a separate question involving separate suppression analysis. *Suggs*, 998 F.3d at

1137-38; *see also Herring v. United States*, 555 U.S. 135, 144 (2009) (only where a violation of law is sufficiently deliberate that deterrence is necessary is suppression required).

Broadly, Crockett argues that there are no severable categories in the warrant because the categories of evidence to be seized are within a general section regarding controlled substances. Doc. 14 at 23. His argument belies the fact that the categories of evidence to be seized are in seven separate bullet points that do not reference each other and maintain significance when read on their own. Each is a distinct license to search for a specific kind of evidence. *See United States v. Sells*, 463 F.3d 1148, 1155–56 (10th Cir. 2006). As such, each can—and must be—analyzed individually. *See Suggs*, 998 F.3d at 1137–38.

Crockett makes several granular arguments designed to show that certain categories in the warrant are overbroad. He first argues that permitting a search for "*other* controlled substances," in addition to marijuana, was overbroad. Doc. 14 at 19. But the affidavit provided more than a fair probability that evidence of illegal possession or distribution of controlled substances, including but not limited to marijuana, would be found in the Klein St. residence. Multiple facts indicated that the Klein St. residence may have been a distribution house: Mario's high volume of short visits, a trash pull revealing illegal drugs, and the arrested drug dealer naming Mario as a supplier of methamphetamine. Doc 14-1 at 10. In addition, Mario and Crockett had past convictions for offenses related to other controlled substances beyond marijuana, including cocaine hydrochloride and "stimulant[s]." Doc. 14-1 at 7, 10. These facts created a "fair probability" that the Klein St. residence contained evidence of distribution of controlled substances beyond marijuana. *See United States v. Artez*, 389 F.3d 1106 (10th Cir. 2004) (together an informant's tip, officer's surveillance of individuals with prior narcotics convictions visiting a home, and an anonymous tip, supported a search warrant to search a home for evidence of methamphetamine distribution). In short, a person of "reasonable caution"

could connect the Klein St. residence with distribution of controlled substances generally.[3]

Crockett points to a variety of facts that suggest an innocent explanation for the suspicious traffic identified by Dahlke, facts which Crockett argues make other locations more likely to contain evidence of distribution than the Klein St. residence. Doc. 14 at 13–15, 17. That matters not. Probable cause requires only a fair probability of unlawful conduct and does not require the exclusion of possible lawful explanations. *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009) (noting that probable cause is a question of probabilities). And the Fourth Amendment does not require the government to look for evidence only in the single most likely location. Law enforcement officers need only have probable cause to search their chosen targets. *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019); *accord United States v. Roman*, 942 F.3d 43 (1st Cir. 2019) (probable cause must exist to search each location in which evidence might be found).

Another category in the warrant permitted a search for any and all firearms.[4] The officers executing the warrant were entitled to rely on

---

[3] Crockett also claims that the warrant is overbroad because marijuana is not a narcotic. Doc. 14 at 20. But there was probable cause to search for "other controlled substances" which includes narcotics. Accordingly, Crockett's argument is not persuasive. *See United States v. Brakeman*, 475 F.3d 1206 (10th Cir. 2007) (applying the traditional rule that "[p]ractical accuracy rather than technical precision controls" the determination of particularity in the context of a search which revealed controlled substances).

[4] The warrant authorized the seizure of "[a]ny firearms to include but not limited to clips, magazines, scopes, cases and ammunition," but the affidavit does not mention any nexus between the Klein St. residence and potential weapons. Docs. 14-1 and 14-2; *but see United States v. Suggs*, 998 F.3d 1125 at 1139 (10th Cir. 2021) (finding a nexus between felons who cannot possess guns and their home), *United States v. Pulliam*, 748 F.3d 967 (10th Cir. 2014) (same). Yet Crockett's motion does not challenge the firearm provision or claim that it is overbroad. The Government, for its part, has been silent on this issue, only briefly alluding to the gun being found as the officers were searching for the marijuana. As neither party directly presented an argument challenging or supporting the basis for the warrant's firearms provision, this Memorandum and Order assumes, without deciding, that the firearm provision is permissible but analyzes good-faith as a precautionary measure.

the warrant when seizing the firearm. There was no reason for the executing officers to believe that the warrant was defective or that, in this case, they had probable cause to search for controlled substances but not firearms. Nor does any fact from the record or the hearing suggest that a reasonable, well-trained officer in these circumstances would have had reason to doubt that a neutral magistrate issued the warrant or to believe that other officers lied to obtain the warrant. *See United States v. Jimenez*, 205 Fed. App'x 656, 662 (10th Cir. 2006) (even though there was no nexus between the place to be searched and firearms, "the good-faith exception applies to the officers' reliance on the warrant" absent reckless and intentional omissions of information). And there is no indication that this warrant was facially overbroad. *Cf. United States v. Leary*, 846 F.2d at 606–610 (where a warrant provides no guidelines cabining the search or the evidence to be seized, it is "overbroad on its face"). Consequently, the officers executing the Klein St. residence search were entitled to rely on the warrant when seizing the gun.

Next, Crockett contests three categories authorizing a search for "all" cell phones and surveillance equipment, as well as any documents relating to the ownership of property.[5] Even assuming these categories were overbroad and material was seized pursuant to these categories, the good faith exception applies here just as it does to the firearms provision. *See United States v. Russian,* 848 F.3d 1239 (2017) (holding that the seizure of cell phones without a particular warrant was nevertheless objectively reasonable).[6]

Finally, Crockett contends the warrant cannot be saved because the valid parts do not make up the "greater part" of the warrant. Doc. 14 at 24; *see United States v. Cotto*, 995 F.3d 786, 799 (10th Cir. 2021) (a warrant containing categories that are themselves overbroad or unsupported by probable cause is salvageable only when "the valid portions

---

[5] It is unclear from this record whether any material was ever seized pursuant to these categories and if it was, whether it belonged to Crockett.

[6] At the November 20 hearing, Crockett argued that the good faith rule does not apply because the warrant did not incorporate the probable cause affidavit. That has no bearing on whether an executing officer can rely on the warrant unless the warrant is obviously and facially defective. *See Groh v. Ramirez*, 540 U.S. 551, 558–59 (2004).

of the warrant make up the greater part of the warrant"). But the greater part inquiry is unnecessary when it is clear the invalid portions do not "so predominate" that the warrant authorizes a general search. *United States v. Sells*, 463 F.3d 1148, 1158 (10th Cir. 2006). Since the warrant and supporting affidavit make clear that this was primarily a search for controlled substances and the additional license to seek cell phones, documents, firearms, and surveillance equipment did not substantially expand the scope or area of the search, the greater part inquiry need not be conducted. Those categories do not "so predominate" that the warrant was transformed into a general or facially invalid warrant via their inclusion. *See Cotto*, 995 F.3d at 800.

**b**. Crockett's second avenue of attack on severability is pretext. Crockett's position is that using "trace" amounts of marijuana to obtain a warrant really designed to search for other controlled substances, like methamphetamine, is impermissible and eliminates the possibility of severance. Doc. 14 at 25 (citing *Sells*, 463 F.3d 1148). But the subjective intent of law enforcement is irrelevant to Fourth Amendment analysis; the only question is whether the warrant is supported by objectively reasonable individualized suspicion giving rise to probable cause for the search and/or seizure. *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011). Moreover, it is not entirely clear that pretext would preclude a severability analysis. *Sells*, 463 F.3d 1148, 1161 n.7 (10th Cir. 2006) ("We therefore need not determine whether a showing of pretext eliminates application of the severance doctrine"). And in any event, Crockett has not established pretext. As described above, there was probable cause to search for "other controlled substances" and the inclusion of the possibly overbroad categories did not expand the scope of the search. Whether the cell phones, firearms, surveillance equipment, and documents categories were included or not, law enforcement had probable cause to enter and search within the Klein St. residence for controlled substances.

### 4.

At the November 20 hearing, Crockett argued that Dahlke omitted from the affidavit some of Crockett's conviction details and their ultimate resolutions, and did not explain that the marijuana edibles from the trash pull were labelled "medical use only." These omissions, Crockett says, misled the reviewing judge, creating a *Franks* issue. *See Franks v. Delaware*, 438 U.S. 154 (1978) (evidence must be suppressed when the warrant contains false and misleading statements material to the reviewing judge's determination of probable cause).

Even assuming the issue was properly raised,[7] there is no *Franks* violation. Crockett identifies details (specific dates and resolutions of prior convictions) which do not negate probable cause to search the Klein St. residence. These omissions therefore did not result in a substantially misleading warrant application. *See United States v. Moses*, 965 F.3d 1106, 1114 (10th Cir. 2020) (holding that where omitted evidence was not "materially exculpatory and did not negate probable cause" no *Franks* hearing was required). Furthermore, there is no evidence of deliberate falsification or reckless omission of material information. *United States v. Artez*, 389 F.3d 1106, 1117 (10th Cir. 2004) (holding that a supporting affidavit's failure to mention that "arrests occurred many years ago and did not result in convictions" does not automatically demonstrate "that th[ose] omissions were intentional or reckless.").

**B**

Crockett contends that Dahlke violated Fed. R. Crim. P. 41(b) by submitting his warrant application to a state court because Crockett is now being prosecuted in federal court. Doc. 14 at 26. That argument fails for two reasons. First, the investigation was state-centric, so the warrant request retained its state law character. Dahlke is a state law enforcement officer, the warrant was issued by a state judge with jurisdiction, and the involvement of federal officials was tangential until the fruit of the search had been evaluated. No federal agents participated in the Klein St. residence search and federal agents only marginally aided Dahlke in the leadup to the search. *See United States v. Sadlowski*, 948 F.3d 1200, 1204 (10th Cir. 2020) (where a search has "minimal or no federal involvement" it retains its state law character). Second, Dahlke testified that he was not planning to present the case to the United States Attorney's Office from the outset. While he knew that

---

[7] At the suppression hearing, Crockett claimed this argument was asserted in his brief in footnote 21. Doc. 14 at 17 n. 21 (pointing to a Ninth Circuit decision that discussed *Franks*). In his brief, Crockett references *Franks* by name only once, in footnote 56, which discusses a First Circuit case discussing *Franks*. The Government asserts this was insufficient to alert it that Crockett was contending there had been material misstatements in the warrant application. The Government has the better position on this matter. *See generally United States v. Anthony*, 22 F.4th 943, 952 (10th Cir. 2022) (arguments "raised for the first time" at an oral hearing are typically considered waived). But out of an abundance of caution, this Memorandum and Order nonetheless assumes without deciding that the parenthetical references to decisions involving a *Franks* hearing preserved the issue for argument.

discovering a gun could trigger a federal prosecution, there is no evidence that Dahlke sought to involve federal prosecutors before a gun was located. A state warrant is not retroactively transformed into a federal one simply because the post-search circumstances change the focus or prosecution of an investigation. *United States v. Barrett*, 496 F.3d 1079, 1090–91 (10th Cir. 2007).

Even if Crockett could show a technical violation of Rule 41(b), suppression is not warranted because he has not shown that any possible violation was deliberate, prejudicial, or of "constitutional magnitude." *United States v. Krueger*, 809 F.3d 1109, 1113–14 (10th Cir. 2015). The trash pulls were constitutional, and the affidavit justified the search of the home. In other words, had Dahlke applied to a federal magistrate judge, the scope of the search would have been substantively the same. Moreover, either a federal judge in Kansas or a Kansas state judge, if no federal judge was reasonably available, would have had jurisdiction to authorize a search of the Klein St. residence. *See Krueger*, 809 F.3d at 1113–17 (holding that a search warrant violating Rule 41(b) is prejudicial when, e.g., the issuing judicial official did not have jurisdiction to issue it). Thus, the alleged Rule 41(b) violation did not facilitate a constitutionally defective search that would have been less "abrasive" or would not have occurred absent violation.

### III

For the foregoing reasons, Crockett's Motion to Suppress, Doc. 14, is DENIED.

It is so ordered.

Date: December 15, 2023          s/ Toby Crouse

                                                      Toby Crouse
                                                      United States District Judge